**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SARA RADOSAVLJEVIC, | ) | CASE NO. 1:23-CV-02264-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | JENNIFER DOWDELL |
| SECURITY ADMINISTRATION, | ) | ARMSTRONG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      INTRODUCTION

Plaintiff Sara Radosavljevic ("Ms. Radosavljevic") seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income Benefits ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated November 21, 2023). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.      PROCEDURAL HISTORY

Ms. Radosavljevic filed prior applications for period of disability ("POD"), disability insurance benefits ("DIB"), and SSI in October 2019, which were denied. (Tr. 72). On November 5, 2021 and November 30, 2021, Ms. Radosavljevic again filed applications for POD, DIB, and SSI. (Tr. 227, 234). Ms. Radosavljevic listed the following conditions that limited her ability to work: (1) bipolar disorder; (2) anxiety; and (3) depression. (Tr. 251).

The Social Security Administration ("SSA") denied Ms. Radosavljevic's applications initially and upon reconsideration. (Tr. 109-10, 127-28). Ms. Radosavljevic requested a hearing before an administrative law judge ("ALJ"). (Tr. 155-56). The ALJ held a hearing on December 21, 2022, at which Ms. Radosavljevic was represented by counsel. (Tr. 42). Ms. Radosavljevic testified, as did an independent vocational expert ("VE"). During the hearing, Ms. Radosavljevic withdrew her request for a hearing on her application for POD and DIB.

On January 16, 2023, the ALJ issued a written decision finding that Ms. Radosavljevic is not disabled. (Tr. 15). The ALJ's decision became final on September 25, 2023, when the Appeals Council declined further review. (Tr. 1).

On November 21, 2023, Ms. Radosavljevic filed her Complaint, challenging the Commissioner's final decision that Ms. Radosavljevic was not disabled. (ECF Doc. No. 1). Ms. Radosavljevic asserts the following assignments of error:

(1)     Whether the ALJ erred by rejecting medical evidence that demonstrates a high degree of mental health impairment.

(2)     Whether the ALJ erred by failing to incorporate all of the limitations caused by the claimant's severe impairments into the assigned residual functional capacity.

(ECF No. 7, PageID # 1342).

**III.     BACKGROUND**

   **A.     <u>Personal, Educational, and Vocational Experience</u>**

Ms. Radosavljevic was born in 1981 and was 38 years old on the date of her application. (Tr. 35, 227). Ms. Radosavljevic graduated from high school and attended some college. (Tr. 35, 252). She is divorced and has one child under the age of 18. (Tr. 55, 228). She previously worked as a collection agent. (Tr. 48).

**B.**     <u>Relevant Hearing Testimony</u>

*1.*     ***Ms. Radosavljevic's Testimony***

Ms. Radosavljevic testified that she lives alone with her teenage son. (Tr. 63). She testified that her mental health goes up and down, and that her mental health is a bit worse than it was at the time of her prior administrative hearing. (Tr. 52). She testified that, since the prior hearing, she has been diagnosed with ADHD and has been prescribed Vyvanse. *Id*. She also testified that she is taking other medications every day to treat her conditions. (Tr. 54-55).

Ms. Radosavljevic testified that she experiences increases in her anxiety and depression to the point that she feels like she is undergoing a manic episode. (Tr. 53). She also testified that those episodes were becoming more frequent, and that she will barricade herself in her room for days at a time, only coming out to eat. *Id*. She also testified that she experiences racing thoughts and sometimes feels like she is in a different world. (Tr. 56-57). She further testified that she experiences frequent crying spells. (Tr. 61).

Ms. Radosavljevic testified that her ability to remember daily activities was "not terrible," but that she gets lost in what she is doing and never finishes tasks. (Tr. 54). She testified that, when she goes to the grocery store, she never remembers everything she is supposed to buy. (Tr. 58). She testified that her mother helps her manage her finances and do the dishes. (Tr. 54-55). She further testified that her husband assisted her with things prior to their divorce. (Tr. 55).

Ms. Radosavljevic did not specifically testify regarding her right elbow epicondylitis, although she did testify regarding her carpal tunnel syndrome and the impact that condition has on her hands and her ability to grip. (Tr. 60).

2.    *Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Ms. Radosavljevic's age, education, and prior work experience who: could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally; could never climb ladders, ropes or scaffolds; could occasionally climb ramps and stairs, stoop, and crawl; could frequently handle and finger and feel bilaterally; must avoid all exposure to unprotected heights, commercial driving, and dangerous moving equipment; could understand, remember, and apply information to complete simple and detailed instructions in a work environment with routine work tasks that do not require hourly piece-rate type work; and could interact with the general public, co-workers, and supervisors for brief work-related purposes, but could not engage in conflict resolution or directing the work of others. (Tr. 63-64). The VE testified that the individual could not perform Ms. Radosavljevic's past work as a collection agent but could perform jobs existing in the national economy, including work as a cafeteria attendant, office helper, or merchandise marker. *Id.*

In response to a question from Ms. Radosavljevic's attorney, the VE testified that it would be work preclusive if the hypothetical individual would be unable to concentrate and off task for 20 percent or more of a workday. (Tr. 69). The VE further testified that the hypothetical individual could not perform any jobs if the individual would be absent from work one or more times per month on a consistent basis. (Tr. 69-70). Finally, the VE testified that it would be work preclusive if the individual were limited to simple work and would require redirection once per hour to remain on task. (Tr. 70).

**C.      Relevant Opinion Evidence[1]**

*1.      **Karen Allen, LPCC-S***

On November 30, 202, Ms. Allen, Ms. Radosavljevic's treating therapist, completed a medical source statement with respect to Ms. Radosavljevic's mental impairments. (Tr. 1320). Ms. Allen opined that Ms. Radosavljevic had extreme limitations in her ability to sequence multi-step activities, sustain an ordinary work routine and regular attendance, adapt to changes, and manage her psychologically based symptoms. (Tr. 1320-21). Ms. Allen further opined that Ms. Radosavljevic had a marked limitation in her ability to make plans for herself independent of others, complete tasks in a timely manner, work at an appropriate and consistent pace, initiate or sustain conversation, state her own point of view, handle conflicts with others, use reason and judgment to make work-related decisions, and identify and solve problems. *Id.* Ms. Allen also opined that Ms. Radosavljevic had a moderate limitation in her ability to recognize a mistake and correct it; respond to requests, suggestions, corrections, and challenges; keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness, and set realistic goals. *Id*. Finally, Ms. Allen opined that Ms. Radosavljevic had a mild limitation in her ability to ignore or avoid distractions while working, initiate and perform a task that she knows how to do, understand and respond to social cues, ask and answer questions and provide explanations, describe work activities to someone else, follow one- or two-step oral instructions to carry out a task, and understand instructions. *Id*.

In a one-page letter attached to her assessment, Ms. Allen opined that Ms.

---

[1] At the administrative level, Ms. Radosavljevic alleged a variety of physical and mental impairments. In this proceeding, Ms. Radosavljevic challenges only the ALJ's determination with respect to her mental impairments and her right elbow epicondylitis. Accordingly, I summarize only evidence regarding those impairments.

Radosavljevic met the criteria for a diagnosis of bipolar disorder, generalized anxiety disorder, attention deficit disorder, and panic disorder, although Ms. Allen also opined that Mr. Radosavljevic no longer experiences manic episodes as a result of her medication. (Tr. 1322). Ms. Allen opined that Ms. Radosavljevic continues to have significant problems with emotion regulation, stress tolerance, memory, focus, planning, and follow-through that significantly impaired her ability to function effectively with the tasks of adult living. *Id*. Ms. Allen opined that Ms. Radosavljevic's mental health diagnoses, dysfunctional relationships, and early trauma impaired her ability to function in the working world and her personal life. *Id*.

The ALJ found that Ms. Allen's opinion was not persuasive because it was inadequately supported, was based on Ms. Radosavljevic's mental health history and reported symptoms, and was inconsistent with the remaining evidence of record. (Tr. 33-34).

### 2. *State Agency Medical Consultants—Physical Impairments*

On January 23, 2022, W. Scott Bolz, M.D., a state agency medical consultant, opined that Ms. Radosavljevic could perform work at the medium exertional level but could only frequently climb ramps and stairs, could never climb ropes, ladders, or scaffolds, and could frequently balance, stoop, kneel, crouch, and crawl. (Tr. 105). Dr. Bolz's assessment was an adoption of the residual functional capacity from Ms. Radosavljevic's prior administrative proceeding. *Id*. The ALJ found that Dr. Bolz's opinion was not persuasive because the evidence in the record confirmed greater limitations than Dr. Bolz identified. (Tr. 32).

On reconsideration, Lynne Torello, M.D., opined on May 25, 2022 that Ms. Radosavljevic could occasionally lift or carry up to 20 pounds and could frequently lift or carry 10 pounds. (Tr. 122). Dr. Torello further opined that Ms. Radosavljevic could never

climb ladders, ropes, or scaffolds, could occasionally climb ramps or stairs, stoop, and crawl, and must avoid all exposure to hazards. (Tr. 122-23). Dr. Torello also opined that Ms. Radosavljevic was limited in handling, fingering, or feeling in both hands. (Tr. 122). The ALJ found that Dr. Torello's opinion was largely persuasive, but that a restriction to frequent feeling with the bilateral upper extremities was more appropriate. (Tr. 32).

### 3.   *State Agency Medical Consultants—Mental Impairments*

On January 20, 2022, Jennifer Swain, Psy.D., opined that Ms. Radosavljevic was markedly limited in her ability to carry out detailed instructions. (Tr. 106). Dr. Swain also opined that Ms. Radosavljevic was moderately limited in her ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others, complete a normal workday and workweek without interruption from her symptoms and work at a consistent pace, interact appropriate with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. (Tr. 106-07). Dr. Swain further opined that Ms. Radosavljevic could perform one to four step tasks in settings which do not require strict production quotas or rapid pace. (Tr. 106). Dr. Swain also opined Ms. Radosavljevic could interact with coworkers, supervisors, and the public occasionally and superficially, but should not supervise, resolve conflict, or provide a high level of customer service. (Tr. 107). Finally, Dr. Swain opined that Ms. Radosavljevic could adapt to routine changes explained in advanced that were gradually introduced. *Id*. On April 17, 2022, Aracelis Rivera, Psy.D. affirmed Dr. Swain's findings on reconsideration. (Tr. 114).

The ALJ found that the opinions of Drs. Swain and Rivera were somewhat, but not fully, persuasive because they used vague, imprecise terminology. (Tr. 33). The ALJ also

found that the opinions of Drs. Swain and Rivera were not fully consistent with the evidence of record, including the extent of Ms. Radosavljevic's activities of living. *Id*.

**D.    Relevant Medical Evidence**

*1.    Evidence Regarding Mental Health Impairments*

Both before and during the period at issue, Ms. Radosavljevic received treatment for bipolar disorder and anxiety from Ms. Allen at Signature Health on an approximately weekly basis. On November 11, 2020, Ms. Radosavljevic presented as tearful, but was well-groomed and cooperative, with good eye contact, normal speech, and broad affect. (Tr. 513). It was noted that Ms. Radosavljevic was taking several medications for her conditions, including Lamictal, Lexapro, and Abilify. (Tr. 514). Ms. Radosavljevic stated that she was having ongoing issues with her family that were causing her stress. (Tr. 516).

Ms. Radosavljevic had a telephonic follow-up visit with Ms. Allen on November 16, 2020. (Tr. 517). Ms. Radosavljevic again presented as tearful, but with normal speech, a cooperative attitude, and a broad affect. (Tr. 518). Ms. Allen noted that Ms. Radosavljevic reported feeling devastated when she learned that her Social Security application had been denied. (Tr. 521). Ms. Radosavljevic stated that it was difficult for her to function and that she could not seem to get other people to understand that her anxiety and anhedonia paralyze her and prevent her from performing even simple tasks. *Id*. At a follow-up visit on December 2, 2020, Ms. Radosavljevic was cooperative with normal speech and an appropriate affect. (Tr. 528). It was noted that Vyvanse had been added to Ms. Radosavljevic's prescriptions. (Tr. 529).

Ms. Radosavljevic had another session with Ms. Allen on December 9, 2020, during which she was sad and tearful, but was also cooperative with good eye contact and normal

speech. (Tr. 533). Ms. Allen noted that Ms. Radosavljevic was "highly distressed" and expressed frustration regarding all the things going wrong in her life. (Tr. 536). At her next appointment on December 16, 2020, Ms. Radosavljevic was depressed, but was cooperative with normal speech. (Tr. 538).

During appointments in 2021 and 2022, Ms. Radosavljevic continued to present as tearful, depressed, anxious, sad, and/or overwhelmed. (*See*, *e.g.*, Tr. 558, 568, 573, 627-28, 681, 914-15, 1024, 1086, 1232, 1250, 1276, 1288). However, Ms. Radosavljevic also frequently presented with a cooperative attitude, fair or good hygiene, good eye contact, normal speech, intact memory, logical thought processes, an absence of psychosis, and fair judgment, though she also sometimes presented with poor coping. *Id*. Ms. Radosavljevic also repeatedly reported that events in her family life were causing her distress, stress, and anxiety. (*See*, *e.g.*, Tr. 571, 576, 630, 684, 689, 917, 928, 1229, 1250, 1276, 1288).

On January 26, 2021, Ms. Radosavljevic reported that her depression was a seven out of ten, while her anxiety was a three out of ten. (Tr. 630). She also denied suicidal ideation and psychosis and presented no signs of mania. *Id*. It was noted that Ms. Radosavljevic was at a moderate risk due to the severity of her symptoms and that her current medication regimen kept her out of a manic state. (Tr. 631).

On January 27, 2021, Ms. Radosavljevic reported that she felt unable to do anything, and that she had cleaned the living room but felt unable to do the dishes. (Tr. 576). She also reported that she could not eliminate negative thoughts, and that she felt unlovable and responsible for her family problems. *Id*.

On April 30, 2021, Ms. Radosavljevic sobbed during a counseling appointment and said that she had not been able to stop crying for days. (Tr. 669). She stated that her husband

had informed her that he intended to divorce her. *Id*. On May 13, 2021, Ms. Radosavljevic reported feeling overwhelmed and barely able to function. (Tr. 684).

On October 13, 2021, Ms. Radosavljevic's distress was rated as a ten out of ten, and it was noted that she cried throughout much of the session. (Tr. 9331). However, at a visit with psychiatric nurse practitioner Rachael McLaughlin, APN, on the same day, she rated her depression as a two out of ten and her anxiety as a three out of ten. (Tr. 933). It was also noted that Ms. Radosavljevic had diagnoses of chronic fatigue and attention deficit hyperactivity disorder in addition to bipolar disorder and anxiety. (Tr. 932). On November 18, 2021, it was noted that Ms. Radosavljevic's bipolar disorder was in partial remission. (Tr. 928).

On February 10, 2022, Ms. Radosavljevic stated that she was in the middle of a "rough patch" and wanted an adjustment to her medication to help her cope. (Tr. 1032). On examination, her behavior and mood were anxious, and she was tearful throughout the encounter. *Id*. However, her appearance, affect, insight, and judgment were appropriate, and her speech, perception, and thought content were unremarkable. *Id*.

On February 16, 2022, Ms. Radosavljevic stated that she was "physically and mentally hurt" and that she just wanted to sleep. (Tr. 1073). On examination, Ms. Radosavljevic was nervous, anxious, and irritated, but her behavior was generally relaxed and engaged, with appropriate or unremarkable speech, affect, thought content, perception, insight, and judgment. *Id*.

On February 22, 2022, Ms. Radosavljevic called Ms. Allen "in crisis." (Tr. 1070). It was noted that Ms. Radosavljevic was crying hysterically and stated that she could never be loved by anyone. *Id*. Ms. Allen said that she would contact the prescriber of Ms. Radosavljevic's medication about a possible adjustment to get her through the crisis. *Id*. On

the same day, Ms. Radosavljevic presented to Nurse McLaughlin for a telephonic psychiatric follow-up. (Tr. 1065). Nurse McLaughlin noted that the appointment had been moved up due to acute stressors. (Tr. 1066). Ms. Radosavljevic was initially calm, but suddenly became hysterical when discussing her family situation, speaking very rapidly with a flight of ideas. *Id*. Ms. Radosavljevic stated that she could not stop crying but was trying to be strong. *Id*. Ms. Radosavljevic also reported that her thoughts were racing, that her depression and anxiety were greatly increased, and that she struggled with motivation for doing household tasks. *Id*.

On July 8, 2022, Nurse McLaughlin noted that Ms. Radosavljevic presented with slightly rapid speech but was easy to follow. (Tr. 1244). Ms. Radosavljevic reported that her depression was a four out of ten while her anxiety was a ten out of ten. *Id*. She also reported episodes of uncontrollable crying and that she struggled with daily motivation around the house. *Id*.

On July 20, 2022, Ms. Radosavljevic was highly distressed, with pressured speech and a sad, angry mood. (Tr. 1241). On July 29, 2022, Ms. Radosavljevic was tearful and destressed throughout her counseling session with Ms. Allen. (Tr. 1238). On August 3, 2022, it was noted that Ms. Radosavljevic had also been diagnosed with panic attacks. (Tr. 1234).

On August 17, 2022, Ms. Radosavljevic reported that her depression was a two out of ten, but that her anxiety was higher. (Tr. 1226). She also reported that she had been doing some cleaning. *Id*. On examination, she was cooperative, happy, nervous, and anxious. *Id*. On October 5, 2020, her speech was rapid and pressured, and she rated her distress as a seven or eight out of ten. (Tr. 1270).

On October 9, 2022, Ms. Radosavljevic presented to Parma Medical Center, stating that she felt manic. (Tr. 1316). Ms. Radosavljevic denied experiencing suicidal ideation,

11

audio, or visual hallucinations. *Id*. She stated that she wanted something to calm her thoughts and someone to speak to, but that her counselor and psychiatrist were not available until the next day. *Id*. On examination, Ms. Radosavljevic was alert and oriented with appropriate judgment and pressured speech. (Tr. 1317). It was noted that Ms. Radosavljevic would be medicated with Ativan. *Id*. However, Ms. Radosavljevic left without treatment being completed. *Id*.

On October 11, 2022, Ms. Radosavljevic had an unscheduled "crisis support session" with Ms. Allen. (Tr. 1305). Ms. Radosavljevic reported her visit to the Parma ER and stated that she could not stop crying and could not calm down. (Tr. 1306). On examination, she was tearful, frantic, sad, nervous, anxious, scared, and angry, with pressured speech, appropriate affect, insight, and judgment, and unremarkable perception. *Id*.

Ms. Radosavljevic's treatment notes also reflect that she was, at points, able to engage in travel and other activities during the relevant period. On January 6, 2021, Ms. Radosavljevic and Ms. Allen discussed a trip that Ms. Radosavljevic had taken to New York with her husband. (Tr. 561). She reported that the trip went well and that, although she was anxious, it went better than a prior trip, during which Ms. Radosavljevic felt like she was dissociating. *Id*. On other occasions, records reflect that she took trips to Utah and Chicago. (Tr. 1102, 1235),

### 2. *Evidence Regarding Right Elbow Epicondylitis*

On February 10, 2021, Ms. Radosavljevic presented to Signature Health, complaining that she had been experiencing right elbow pain for the last two weeks. (Tr. 705). She rated her pain as a three out of ten but said that it increased to an eight out of ten when she lifted things. *Id*. She did not display any injury or swelling. *Id*. On examination, Ms. Radosavljevic

had positive tenderness on palpitation of her right upper extremity. (Tr. 709). She also displayed mild swelling, no erythema, or heat to touch. *Id*. She was diagnosed with neuralgia and neuritis, unspecified. *Id*. She was prescribed Medrol and instructed to wrap her right arm and take an over-the-counter pain killer as needed. *Id*.

On March 23, 2021, Ms. Radosavljevic presented to the Cleveland Clinic Spine Institute, complaining of, among other things, continuing right elbow pain. (Tr. 775). Review of an MRI from February 2020 revealed lumbar spondylosis, degenerative disc disease, and lumbar disc displacement, as well as lateral epicondylitis in her right elbow. (Tr. 779). She was prescribed a trial of Voltaren gel for her right elbow. *Id*.

On May 21, 2021, Ms. Radosavljevic again presented to Signature Health, complaining that she had experienced pain in her right arm for the last four months. (Tr. 692). She rated the pain as a four out of ten and stated that the pain was worse when she moved her elbow. *Id*. She also reported that she had some improvement previously when she took oral steroids. *Id*. It was noted that she had no injury or swelling. *Id*. Ms. Radosavljevic was diagnosed with other specified disorders of the tendon in her right elbow. (Tr. 696). She was prescribed Medrol, was instructed to use a warm compress and an ace wrap, and was directed to take over the counter pain relievers as necessary. *Id*. In treatment notes, Ms. Radosavljevic's elbow pain was described as a self-limited or minor problem. (Tr. 697).

Treatment records do not reflect that Ms. Radosavljevic received specific treatment for her right elbow epicondylitis after that date. However, she did receive treatment for carpal tunnel disease in both arms. (Tr. 1075-80, 1218).

## IV.    THE ALJ'S DECISION

With respect to Ms. Radosavljevic's claim for POD and DIB, the ALJ noted that,

13

during the hearing, Ms. Radosavljevic's counsel moved to amend the alleged onset date from January 5, 2011 to November 13, 2020, which the ALJ granted. (Tr. 18). The ALJ further noted that Ms. Radosavljevic's counsel stated that, in amending the alleged onset date, Ms. Radosavljevic was withdrawing her request for a hearing as it pertained to her application for POD and DIB, as Ms. Radosavljevic's date last insured preceded her amended onset date. (Tr. 18-19). The ALJ found that Ms. Radosavljevic was fully advised of the consequences of withdrawing the hearing request, including that the reconsideration determination denying her request for POD and DIB would become final. (Tr. 19). The ALJ thus dismissed Ms. Radosavljevic's request for a hearing with respect to her application for POD and DIB. *Id*.[2]

With respect to Ms. Radosavljevic's claim for SSI, the ALJ determined that Ms. Radosavljevic had not engaged in substantial gainful activity since November 13, 2020, the amended alleged onset date. (Tr. 21). The ALJ further determined that Ms. Radosavljevic had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, obesity, right elbow epicondylitis, bilateral carpal tunnel syndrome, bipolar disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder (ADHD). *Id*. The ALJ determined, however, that none of Ms. Radosavljevic's impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*.

The ALJ further determined that Ms. Radosavljevic had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except never climb, ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally stoop and crawl; can frequently handle and finger and feel bilaterally; avoid all

---

[2] Ms. Radosavljevic acknowledges in her merits brief that her claim for POD and  DIB was dismissed. (ECF No. 7, PageID # 1342). Accordingly, I will analyze only Ms. Radosavljevic's claim for SSI.

exposure to work in unprotected heights, no commercial driving, and no operating dangerous moving equipment, such as power saws and jack hammers; can understand, remember, and apply information to complete simple and detailed instructions in a work environment that has routine work tasks that do not require hourly piece rate type work; can interact with the general public, coworkers, and supervisors to engage in brief work related purposes, such as asking questions, clarifying instructions, taking orders, gathering information, pointing, or directing where items may be placed; no conflict resolution or directing the work of others.

(Tr. 25).

The ALJ next determined that Ms. Radosavljevic could not perform her past relevant work as a collection agent. (Tr. 34-35). However, the ALJ determined that, considering Ms. Radosavljevic's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Ms. Radosavljevic could perform, including work as a cafeteria attendant, office helper, or merchandise marker. (Tr. 35-36). Accordingly, the ALJ determined that Ms. Radosavljevic was not disabled. (Tr. 36).

## V.     LAW & ANALYSIS

### A.     <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

15

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 103 (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

### B.  Standard for Disability

Consideration of disability claims follows a five-step review process. 20 C.F.R. § 416.920. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the

claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(e). An RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1). Agency regulations direct the ALJ to consider the functional limitations and restrictions resulting from a claimant's medically determinable impairment or combination of impairments, including the impact of any related symptoms on the claimant's ability to do sustained work-related activities. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *5 (July 2, 1996).

 "A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019). The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v.*

*Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support [the ALJ's] decision, especially when that evidence, if accepted, would change [the ALJ's] analysis." *Golden*, 2018 WL 7079506 at *17.

At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing his past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. § 416.920(g). *See Abbott*, 905 F.2d at 923.

**C.   <u>Analysis</u>**

Ms. Radosavljevic argues that the ALJ erred in two respects: (1) dismissing medical and opinion evidence demonstrating that she suffers from a high degree of mental health impairment; and (2) failing to incorporate all of the limitations caused by her right elbow epicondylitis. For the reasons set forth below, I conclude that Ms. Radosavljevic's arguments are without merit.

*1.   **The ALJ's Evaluation of Ms. Radosavljevic's Mental Impairments***

Ms. Radosavljevic argues that the ALJ erred in two respects when evaluating her mental health impairments. First, she asserts that the ALJ improperly cherry-picked evidence to reach a conclusion that her mental health impairments did not impose marked limitations on her ability to function. Second, she argues that the ALJ failed to properly evaluate the opinions of her treating therapist, Ms. Allen. I will consider each argument in turn.

a.   ***Improper Cherry-Picking***

An ALJ may not cherry pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding. *See, e.g., Gentry v. Comm'r*, 741 F.3d 708, 723-24 (6th Cir. 2014) (reversing where ALJ failed "to address certain portions of the record, including evidence of a continuing illness that was not resolved despite use of increasingly serious and dangerous medications"). However, "the ALJ does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position." *Solembrino v. Astrue*, No. 1:10-cv-1017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011). To the contrary, the Sixth Circuit has explained that allegations of cherry-picking evidence by the ALJ are "seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)). Moreover, it is well settled that an ALJ need not discuss every piece of evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.") (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Ms. Radosavljevic argues that the ALJ cherry-picked evidence to conclude that she was at most moderately impaired in all functional areas while overlooking or discounting "a host" of contrary evidence regarding the severity of her mental health symptoms. (ECF No. 7, PageID # 1353). After careful review, however, I conclude that the ALJ did not engage in impermissible cherry-picking. Rather, the ALJ thoroughly analyzed the evidence—both

19

positive and negative—related to Ms. Radosavljevic's mental impairments in accordance with the applicable regulations.

As an initial matter, the ALJ discussed Ms. Radosavljevic's hearing testimony regarding her mental health issues, including her anxiety, increased depression, racing thoughts, crying spells, issues with recall, and difficulty completing tasks. (TR. 25). The ALJ acknowledged Ms. Radosavljevic's testimony that she receives help with household chores and her finances. (Tr. 25-26). The ALJ also acknowledged Ms. Radosavljevic's use of medication and issues with sleep and manic episodes. (Tr. 26). The ALJ additionally cited to treatment notes diagnosing Ms. Radosavljevic with bipolar disorder and anxiety and demonstrating that she received frequent counseling and took various medications. (Tr. 27). The ALJ also discussed notes containing reports of depression, anxiety, agitation, crying, racing or ruminating thoughts, impaired concentration, and stressors. (Tr. 28). The ALJ further noted that Ms. Radosavljevic presented as tearful, anxious, occasionally distraught, irritable, hopeless, and angry, and that she showed a depressed, labile, congruent affect; rapid, pressured speech; impaired insight; and poor coping skills. *Id*.

However, the ALJ also noted that, during a number of counseling sessions, Ms. Radosavljevic was alert, oriented, generally relaxed, engaged, cooperative, and pleasant, with good eye contact and hygiene, normal language and thought content, adequate attention and concentration, intact association and memory, normal perceptions and, at times, appropriate insight and judgment. *Id*. The ALJ further noted that Ms. Radosavljevic did not display psychosis, homicidal or suicidal ideation, or flights of ideas. *Id*. The ALJ thus concluded that, while Ms. Radosavljevic experienced symptoms that would "reasonably interfere" with her ability to interact with others, work at a rapid pace, or tolerate a stressful work environment,

additional restrictions were not warranted beyond those included in the RFC. (Tr. 29-30).

The ALJ also considered the generally conservative nature of the treatment that Ms. Radosavljevic received for her mental health conditions. The ALJ noted that recent examinations revealed generally moderate psychiatric abnormalities, and found that Ms. Radosavljevic had not sought more extensive treatment, such as case management, an intensive outpatient program, or hospitalization. (Tr. 31). It was proper for the ALJ to rely on the relatively conservative nature of the treatment Ms. Radosavljevic received for her mental health conditions. *Metz v. Kijakazi*, No. 1:20-cv-2202, 2022 WL 4465699, at *8 (N.D. Ohio Sept. 26, 2022) ("the Sixth Circuit Court of Appeals has observed that an ALJ's characterization of mental health treatment as conservative was supported by the record where the claimant required only one hospitalization and was generally treated with psychotropic medications and therapy") (citing *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 669 (6th Cir. 2009)); *Burley v. Comm'r of Soc. Sec.*, No. 4:23-CV-00218-BMB, 2023 WL 9604195, at *11 (N.D. Ohio Dec. 20, 2023)), *report and recommendation adopted*, 2024 WL 1297554 (N.D. Ohio Mar. 27, 2024) (holding that it was proper for ALJ to consider conservative nature of claimant's mental health treatment, which did not involve inpatient or emergency treatment).

Moreover, a reviewing court reads an ALJ's decision as a whole. *See Taylor v. Kijakazi*, No. 1:20-cv-01121, 2021 WL 4477865, *8 (N.D. Ohio Sept. 30, 2021). At Step Two, the ALJ noted that Ms. Radosavljevic was able to manage a medication regimen, travel out of state with family members, home school her children, bake, and clean. (Tr. 23). The ALJ also cited to records from July 2021 where Ms. Radosavljevic stated that she planned to start working at her family's butcher shop. *Id*.

Ms. Radosavljevic argues that the ALJ should not have relied on her activities of daily living because there is a difference between performing occasional chores and going on occasional trips on the one hand and working 40 hours per week on the other. In support, Ms. Radosavljevic cites to *Lorman v. Commissioner of Social Security*, 107 F. Supp. 3d 829 (S.D. Ohio 2015), which held that a claimant's ability to perform some activities on a limited basis does not demonstrate that the claimant can perform full time work. *Id*. at 838. However, the ALJ did not rely exclusively on reports of Ms. Radosavljevic's daily activities. Rather, the ALJ considered that evidence in conjunction with the treatment record and the medical opinions. It was proper for the ALJ to do so. *See Lawrence Comm'r of Soc. Sec.*, No. 1:21-CV-01691-JG, 2023 WL 2246704, at *13 (N.D. Ohio Jan. 19, 2023) (rejecting argument that ALJ's decision should be reversed for improper reliance on daily activities "did not rely solely on [those] activities in determining that she remained capable of sedentary work with additional restrictions"), *report and recommendation adopted*, 2023 WL 2242796 (N.D. Ohio Feb. 27, 2023); *Edwards v. Comm'r of Soc. Sec.*, No. 3:22-CV-00597, 2023 WL 2988373, at *13 (N.D. Ohio Mar. 10, 2023), *report and recommendation adopted*, 2023 WL 3866333 (N.D. Ohio June 7, 2023) ("as the ALJ's references to the medical evidence – in combination with Edwards's daily activities – shows, the ALJ relied on more than Edwards's daily activities alone").

In sum, rather than cherry-picking evidence to support a finding that Ms. Radosavljevic was not disabled, the ALJ instead considered the record as a whole, both positive and negative, in formulating the RFC. And, while Ms. Radosavljevic identifies contrary evidence that she believes should have supported a different conclusion, "the Commissioner's decision cannot be overturned if substantial evidence, or even a

preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). A reviewing court may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Substantial evidence supports the ALJ's determination here, and I recommend that the Court reject Ms. Radosavljevic's argument that the ALJ impermissibly cherry-picked evidence in formulating MS. Radosavljevic's RFC.

### b.   *Evaluation of Ms. Allen's Opinion*

Ms. Radosavljevic also argues that the ALJ erred in rejecting the opinion of her therapist, Ms. Allen, who opined that Ms. Radosavljevic had moderate, marked, or extreme limitations in a number of functional categories and who also opined that Ms. Radosavljevic cannot function when she is under increased stress. (Tr. 1320-22).

Under the regulations applicable to Ms. Radosavljevic's claim, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).[3] The SSA considers opinions from medical sources under five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with other evidence in the claim or with the disability program's policies and evidentiary requirements. 20 C.F.R. §

---

[3] Because Ms. Radosavljevic filed her disability claim after March 27, 2017, the prior "treating physician" rule, pursuant to which an ALJ was required to give controlling weight to an opinion from a treating physician absent good reason not to, does not apply. *See* 20 C.F.R. § 416.927; *Merrell v. Comm'r of Soc. Sec.*, 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021), *report and recommendation adopted*, 2021 WL 1214809 (N.D. Ohio Mar. 31, 2021).

416.920c(c). Section 416.920c(b)(1) specifically provides that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 416.920c(b)(1).

Of the five factors, supportability and consistency are the most important, and an ALJ must explain how the ALJ considered them. 20 C.F.R. § 416.920c(b)(2). The ALJ "may" but "is not required to" explain how the ALJ considered the remaining factors. *Id*. The "supportability" factor looks to how well the medical source supports the opinion with objective medical evidence from the record. *See* 20 C.F.R. § 416.920c(c)(1). The "consistency" factor looks to how consistent the medical opinion is with evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 416.920c(c)(2).

The ALJ found that Ms. Allen's opinion was not persuasive, stating as follows:

> This opinion is not persuasive, as it is inadequately supported. More specifically, although Ms. Allen notes diagnoses of bipolar disorder, generalized anxiety disorder, attention deficit disorder, and panic disorder as a response to stress, and various reported symptoms therein, she does not mention any psychiatric abnormalities on mental status examination, such as an abnormal mood, affect, or speech, or impaired attention, concentration, memory, insight, or judgment, to support the extreme limitations contained therein (*Id*.). Rather, the opinion appears to be based on the claimant's mental health history and reported psychiatric symptoms (*Id*.). In addition, the opinion is inconsistent with the remaining evidence of record, specifically, the mental health treatment notes of record, which include Ms. Allen's notes (Exhibit B5F/4-57; B7F; B6F/31-53; B10F/1-5, 14-28, 33-48, 54-61; B12F; B15F/2-11, 16-35; B13F; B11F/2-14, 19-32, 38-45; B18F; B20F; B21F; B22F). These records, which contain findings of normal alertness and orientation, generally relaxed, engaged, cooperative, pleasant behavior, good eye contact, hygiene, and grooming, normal language, adequate attention and concentration, intact associations and memory, and normal thought content and perceptions, confirm the claimant is less limited than indicated by Ms. Allen. For these reasons, her opinion is not persuasive.

(Tr. 33-34).

The ALJ's opinion explicitly addresses supportability, finding that Ms. Allen did not rely on any psychiatric abnormalities revealed on a mental status examination to support the limitations she identified. The ALJ also noted that Ms. Allen's opinion appeared to be based on Ms. Radosavljevic's reported symptoms and general treatment history rather than specific examination findings. Courts have held that an ALJ properly addresses the supportability of a medical opinion where the ALJ notes that the medical source fails to explain how the treatment record supports the medical source's opinion. *See Dawson v. Comm'r of Soc. Sec.*, No. 4:22-CV-00304, 2023 WL 6794476, at *17 (N.D. Ohio Oct. 13, 2023) (holding that ALJ addressed supportability factor by noting that treating source did not explain how claimant's treatment supported limitations that treating source had identified); *Lyons v. Kijakazi*, No. 1:20-cv-1567, 2022 WL 1064070, at *7 (N.D. Ohio Jan. 10, 2022), *report and recommendation adopted sub nom.*, 2022 WL 610762 (N.D. Ohio Mar. 1, 2022) (holding that ALJ properly discounted opinion of treating physician where physician offered no supporting explanation and did not identify objective medical evidence to support limitations assessed); *Gasiewski v. Comm'r of Soc. Sec.*, No. 4:22-CV-002194, 2023 WL 5673034, at *9 (N.D. Ohio Aug. 14, 2023), *report and recommendation adopted*, 2023 WL 5671936 (N.D. Ohio Sept. 1, 2023) ("The Sixth Circuit has found that an ALJ properly discounts a medical opinion where it is based on subjective complaints.") (citing *Remias v. Comm'r of Soc. Sec.*, 690 F. App'x 356, 357 (6th Cir. 2017)).

Similarly, the fact that a physician's opinion is inconsistent with her own treatment notes, as the ALJ found here, is a valid basis on which to discount an opinion. *See Rattliff v. Comm'r of Soc. Sec.*, No. 1:20-cv-01732, 2021 WL 7251036, at *9 (N.D. Ohio Oct. 29, 2021),

*report and recommendation adopted*, 2022 WL 627055 (N.D. Ohio Mar. 3, 2022) (holding that ALJ addressed supportability by noting that physician's opinion was inconsistent with physician's treating notes); *Neff v. Comm'r of Soc. Sec.*, No. 5:18 CV 2492, 2020 WL 999781, at *11 (N.D. Ohio Mar. 2, 2020) (same).The ALJ thus adequately addressed the supportability factor with respect to Ms. Allen's opinion.

The ALJ also addressed the consistency factor, finding that Ms. Allen's opinion was "inconsistent with the remaining evidence of record." (Tr. 33-34). In particular, the ALJ found that Ms. Allen's opinion was inconsistent with treatment notes showing that Ms. Radosavljevic had normal alertness and orientation; generally relaxed, engaged, cooperative, pleasant behavior; good eye contact, hygiene, and grooming; normal language; adequate attention and concentration; intact associations and memory; and normal thought content and perceptions. (Tr. 34). The ALJ also cited to specific records to support that determination, both in analyzing Ms. Allen's opinion and at other points in the decision. *See Taylor*, 2021 WL 4477865 at *8 (holding that a reviewing court reviews the decision as a whole). Substantial evidence supports the ALJ's consistency determination. *See Merrell*, 2021 WL 1222667 at *7 (holding that ALJ's decision to discount weight given to opinion from treating physician was supported by substantial evidence where opinion was inconsistent with evidence in the record); *Creter v. Saul*, No. 1:20-cv-00840, 2021 WL 809323, at *11 (N.D. Ohio Mar. 3, 2021) (holding that ALJ did not err where ALJ specifically cited treatment records ALJ believed were inconsistent with treating physician's opinion and explained why).

Because the ALJ expressly evaluated both the supportability and consistency factors with respect to Ms. Allen's opinion, and because substantial evidence supports the ALJ's determination, I recommend that the Court reject Ms. Radosavljevic's first assignment of

error.

> 2.    ***The ALJ's Failure to Include Limitations Relating to Ms. Radosavljevic's Right Elbow Epicondylitis***

In her second assignment of error, Ms. Radosavljevic argues that the ALJ erred by failing to incorporate limitations arising from her right elbow epicondylitis into the RFC. Ms. Radosavljevic asserts that, having identified right elbow epicondylitis as one of Ms. Radosavljevic's severe impairments, the ALJ was "obligated to make a determination as to the degree that she could move her right upper extremity." (ECF No. 7, PageID # 1358).

As the Commissioner correctly argues, however, the ALJ *did* expressly consider Ms. Radosavljevic's right elbow epicondylitis when formulating the RFC. The ALJ first analyzed Ms. Radosavljevic's right elbow epicondylitis at Step Two, noting that while the record contained evidence of the condition, examinations generally revealed that Ms. Radosavljevic had normal range of motion, full strength, and intact coordination. (Tr. 22).

The ALJ considered Ms. Radosavljevic's right elbow epicondylitis again at Step Four. The ALJ found that Ms. Radosavljevic's medical records reflected right arm pain, and that Ms. Radosavljevic was prescribed Voltaren gel. (Tr. 26). However, the ALJ again noted that exam records showed no deformity or erythema, good range of motion, intact sensation, and normal reflexes and coordination. *Id.*  The ALJ also noted that Ms. Radosavljevic received conservative treatment for her physical conditions. (Tr. 30-31).

Analyzing this evidence, the ALJ found that Ms. Radosavljevic would have difficulty with certain activities, including lifting and carrying. (Tr. 28). The ALJ further found that, given Ms. Radosavljevic's conditions, including "occasional right elbow swelling," it was "reasonable that certain postural maneuvers would pose difficulty if performed constantly." (Tr. 29). Accordingly, the ALJ found that Ms. Radosavljevic was limited to frequent handling,

fingering, and feeling bilaterally, and that she must also avoid exposure to hazards. *Id*. The ALJ also found, however, that greater limitations were not warranted in light of Ms. Radosavljevic's normal range of motion, full strength, and intact coordination. *Id*.

Substantial evidence supports the ALJ's determination, and Ms. Radosavljevic's argument that the ALJ failed to properly analyze her right elbow epicondylitis is belied by the record. To the extent Ms. Radosavljevic believes the ALJ should have weighed the evidence differently and imposed greater limitations, it is not a reviewing court's role to second guess the ALJ's determination. *See Jones*, 336 F.3d at 477. Accordingly, I recommend that the Court reject Ms. Radosavljevic's second assignment of error.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

Dated: October 11, 2024                    */s Jennifer Dowdell Armstrong*
                                          Jennifer Dowdell Armstrong
                                          U.S. Magistrate Judge


## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being**

**served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).